Rothrock et al. v. Rothrock et al.















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-267-CV

     JAN CAMPBELL ROTHROCK AND
     RES LEASING & MANAGEMENT CO., INC.,
                                                                         Appellants
     v.

     EDWARD STREICHER ROTHROCK, III
     AND ROBIN E. ROTHROCK, 
     INDIVIDUALLY AND AS BENEFICIARIES
     OF THE STREICHER TRUST,
                                                                         Appellees
 

From the 334th District Court
Harris County, Texas
Trial Court # 99-45997
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Jan Campbell Rothrock and RES Leasing and Management Co., Inc., appeal from a judgment
awarding Edward Streicher Rothrock, III, and Robin E. Rothrock each an undivided 50 percent
interest in real property and improvements located in Houston. Appellants contend in three issues
that 1) Jan and RES established their cause of action as a matter of law; 2) the trial court erred in
submitting an issue to the jury on behalf of the appellees; and 3) the trial court erred by vesting
title in the beneficiaries of the Streicher trust rather than in the trust itself. We reverse and render
judgment that RES Leasing & Management Co., Inc. is the owner of 100 percent of the property.
      Appellants contend in issue one that Jan and RES established their cause of action as a matter
of law. Because they did not have the burden of proof on the only issue submitted, we construe
this issue as an assertion that there is no evidence to support the jury's finding that a deed to the
family home, executed in favor of RES by Ed, Jr., Jan's deceased husband, individually and as
a trustee of the Streicher trust, was not delivered to Jan or RES or an attorney with the intent to
transfer the property.
      In determining a "no-evidence" issue, we are to consider only the evidence and inferences that
tend to support the finding and disregard all evidence and inferences to the contrary. Bradford
v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Contl Coffee Prods. Co. v. Cazares, 937 S.W.2d 444,
450 (Tex. 1996); In re Kings Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more
than a scintilla of evidence is legally sufficient to support the finding. Cazarez, 937 S.W.2d at
450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
      A "no-evidence" issue may only be sustained when the record discloses one of the following:
(1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence
establishes conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). There is some evidence when
the proof supplies a reasonable basis on which reasonable minds may reach different conclusions
about the existence of the vital fact. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex. 1992).
      Jan married Edward Streicher Rothrock, Jr., her late husband, in 1972. Ed III and Robin,
the appellees, were Ed Jr.’s children by a prior marriage. The Streicher trust owned the residence
in which Jan and Ed, Jr., resided. Robin testified that she believed that under the terms of the
trust “we” were supposed to get the house. Ed, Jr. was trustee of the trust, while Ed III and
Robin are beneficiaries of the trust. In May 1977, Ed, Jr., in both his individual capacity and as
trustee of the Streicher trust, executed a deed that purported to convey the property to RES, which
was wholly owned by Jan. Jan testified that Ed, Jr. handed the deed to her in April or May 1977. 
She indicated that he told her to record it after his death. She stated that when the deed was given
to her, money was owed to third parties and that RES paid that note.
      There was testimony that approximately twenty years later, when Ross Henry, Jan’s son by
a prior marriage, learned that Ed, Jr. wanted the deed back, Henry took the deed from his
mother’s desk drawer and filed it at the office of George Dana, an attorney, to keep it from being
destroyed. After Ed, Jr.’s attempts to obtain the deed failed, he executed an affidavit and attached
a copy of the deed to it. The affidavit, with the copy attached, was filed of record in February
1997. After Ed, Jr.’s death, the deed was filed of record.
      In his affidavit, Ed, Jr. stated that Jan had given the original deed to their attorney at a time
before he had made an actual delivery of it to anyone. He indicated that Jan had told the attorney
that in the event of the death of one of the two, the attorney was to return the original to the
survivor. Ed, Jr. stated that at the time of making the affidavit he still had not delivered the deed
to any person or entity. He declared the deed to be null and void and of no force or effect, so that
the family home remained the sole property of the Streicher trust. Ed, Jr. indicated that when he
contacted the attorney who was given the deed in order to have it returned, the attorney told him
that he had delivered it to Henry, who at that time had Jan’s power of attorney. Ed, Jr. stated that
Jan had subsequently terminated the power of attorney.
      Title to transferred property will vest upon execution and delivery of a deed. Stephens County
Museum, Inc. v. Swenson, 517 S.W.2d 257, 261 (Tex. 1974). A prima facie case of delivery and
the accompanying presumption that the grantor intended to convey the land according to the terms
of the deed is established when it is shown that the deed has been filed for record. Id. at 261-62. 
This presumption that delivery has been accompanied by the required intent that it is to become
operative as a conveyance may be overcome by showing (1) that the deed was delivered or
recorded for a different purpose, (2) that fraud, accident, or mistake accompanied the delivery or
recording, or (3) that the grantor had no intention of divesting himself of title. Id. at 262. The
question of delivery of the deed, being controlled by the intent of the grantor, is determined by
examining all the facts and circumstances preceding, attending, and following the execution of the
instrument. Id. While the question of whether there has been a delivery of the deed is one for the
trier of facts, the question of what constitutes a delivery is one of law. Ragland v. Kelner, 148
Tex. 132, 221 S.W.2d 357, 359 (1949).
      If a grantor delivers a deed to a third person, without any reservation on his or her part of the
right to recall it, and with instructions to the third person to deliver it to the grantee upon the
grantor's death, he or she thereby makes an effective delivery of the deed as a matter of law. Id.
at 359-60. Ed Jr. delivered the deed to Jan with instructions that it be recorded after his death. 
There is no indication of his reserving the right to recall the deed, although there was some
evidence from which the jury could reasonably have determined that he intended that the title
would revert to himself or the trust in the event Jan predeceased him. We believe that the
evidence conclusively establishes that Ed, Jr.'s intention at the time he delivered the deed to Jan
was to convey to RES the future interest in the family home, contingent upon his predeceasing Jan. 
We therefore conclude that under the facts of this case the evidence establishes that there was an
effective delivery of the deed as a matter of law.
      Essentially, the appellees suggest that they presented evidence to support the jury's finding
that the deed was not delivered with the intent to transfer the property, including evidence that Ed,
Jr. and Jan had an agreement that the deed not be recorded until his death; evidence that he later
attempted to obtain possession of the deed; Ed. Jr.'s affidavit that he had not delivered the deed
to any person or entity; the fact that Jan kept the deed in a desk drawer contrary to giving it to the
family attorney as directed; the fact that Jan's son, Ross Henry, removed the deed from his
mother's desk drawer and took it to a lawyer's office so that Ed Jr. could not get and perhaps
destroy it; and the fact that Ed, Jr. had told his children that the family home would someday
belong to them. We will address these contentions.
      The appellees urge that Ed, Jr.'s lack of intent to transfer the property is shown by the fact
that he and Jan had an agreement that the deed was not to be recorded until after his death. In
Ragland, the grantor delivered to a friend a deed conveying certain real property to her brother,
with instructions that her friend was to deliver the deed to her brother if anything happened to her. 
Ragland, 221 S.W.2d at 359. There was no indication that the deed was to be recorded prior to
the grantor's death. Id. The court concluded that these facts showed that when the grantor
delivered the manual possession of the deed into the hands of the third party, she did so with an
intention to pass present title to the land to her brother with the right of possession, use, and
enjoyment of the property remaining in her during her lifetime. Id. at 360. In this case the facts
show that when Ed, Jr. delivered to Jan the manual possession of the deed to RES, he did so with
an intention to pass a future contingent interest to RES, with the right of possession, use, and
enjoyment of the property remaining in himself or the trust during his lifetime, as well as retaining
a future contingent interest in himself or the trust in the event Jan predeceased him.
      The appellees argue that Ed, Jr.’s lack of intent to transfer the property is shown by the fact
that he later sought to obtain possession of the deed and that he made an affidavit indicating that
he had not delivered the deed to any person or entity. Taken together, at best this evidence shows
that Ed, Jr. was later seeking to make a disposition of the property in contradiction to the deed that
he had previously delivered to Jan for the benefit of RES in return for the payment of the debt on
the home. A subsequent effort to make a disposition of the property in contradiction to a deed that
has previously been delivered is ineffective. See Ragland, 221 S.W.2d at 360. Ed Jr.’s statement
that he had not delivered the deed to any person or entity constitutes no more than an erroneous
conclusion of law. Although admitted without objection, we hold that such an erroneous
conclusion of law does not constitute more than a scintilla of evidence that there was, in fact, no
delivery.
      The appellees seek to rely upon the fact that Jan’s son, Ross Henry, removed the deed from
his mother’s desk drawer and took it to a lawyer’s office so that Ed, Jr., could not get and possibly
destroy it. While this activity was not in accordance with the apparent agreement between Ed, Jr.,
and Jan as to what was to be done with the deed between the time of delivery and the time it was
to be recorded, the deed was recorded after Ed, Jr.’s, death in accordance with their agreement. 
With respect to the three enumerated bases for overcoming the presumption of the deed’s validity,
this evidence does not show that the deed was delivered or recorded for a different purpose and
it does not show that Ed, Jr., had no intention of divesting himself of title at the time he delivered
the deed. Even if we were to assume that it constituted some evidence of fraud, accident, or
mistake, it did not constitute evidence of fraud, accident, or mistake accompanying the delivery
or the recording of the deed, both of which were carried out according to the agreement between
Jan and Ed, Jr.
      The appellees also note evidence that Ed, Jr. had always told his children that the home would
some day be theirs. Inasmuch as the children were the beneficiaries of the Streicher trust, had Ed,
Jr. not delivered a deed to the property to Jan for the benefit of RES, the property would have
continued to be held for their benefit in accordance with the terms of the trust.
      In urging that the evidence does not show that there was a delivery of the deed as a matter of
law, the appellees primarily rely on the cases of Driskill v. Forbes, 566 S.W.2d 90, 92 (Tex. Civ.
App.—Eastland 1978, writ ref’d n.r.e.) (quoting Thornton v. Rains, 157 Tex. 65, 299 S.W.2d
287, 288 (1957)); Stephens County, 517 S.W.2d at 262; and Vannerberg v. Anderson, 146 Tex.
302, 206 S.W.2d 217, 219 (1947). We find each of those cases to be distinguishable.
      In Driskill, the court, based upon a jury verdict, set aside a deed from John Syer, the grantor,
to his sister, Dorothy Driskill. Driskill, 566 S.W.2d at 91. The court held that evidence from
Syer’s attorney showing that Syer intended the delivery of title to be temporary in nature; evidence
that although Syer recorded the deed, he kept it in his possession; evidence that Dorothy did not
know of the existence of the deed until after it had already been recorded; evidence that Dorothy
had told a sister in a letter that the placing of the property in her name was “just temporary”; and
evidence that both Dorothy and Syer continued to refer to the property as being Syer’s property,
constituted evidence that there was no delivery of the deed. Id. at 92-93.
      In the case at bar, Ed, Jr., manually delivered the deed to Jan as the sole owner of RES, there
was no testimony that the delivery was for any other purpose than to convey a contingent future
interest to RES in return for its retiring the debt owed on the property; Jan obviously knew of the
delivery; and there was no indication that the conveyance was to be temporary. Under Ed, Jr.’s
version of the facts, he was only to receive the deed back from his attorney in the event that the
future contingency, his dying before Jan, was not met due to her predeceasing him. The fact that
he could have recovered the deed from his attorney prior to his death does not constitute evidence
that he did not intend to make a delivery. Vasquez v. Vasquez, 973 S.W.2d 330, 332-33 (Tex.
App.—Corpus Christi 1998, pet. denied); Amend v. Kay, 304 S.W.2d 735, 740-41 (Tex. Civ.
App.—Amarillo 1957, writ ref’d n.r.e.).
      In Stephens County, there was evidence that the deed in question was made following a
representation to the grantors that it was needed for collateral. Stephens County, 517 S.W.2d at
262. The court held that this evidence supported a jury finding that delivery was not made with
the intention that the deed was to become operative as a conveyance. Id. In the case at bar there
is no evidence that the deed was given for any other purpose than to convey a future contingent
interest in the property in the event of Ed, Jr., predeceasing Jan.
      In Vannerberg, Emanuel Anderson entered into a contract of sale with A. J. Ossian to
purchase certain real estate. Vannerberg, 206 S.W.2d at 219-20. Under the contract of sale,
Anderson owed $10,000 for the land, which included the minerals. Id. The contract of sale
contemplated that title would vest upon payment of the purchase money. Id. at 219. Some ten
years after Anderson took possession of the land, Ossian executed a deed of the mineral rights to
Anderson, subject to a provision that $10,000 of royalties accruing from any lease of mineral
rights would be paid to the grantor as payment of the purchase price under the earlier contract of
sale. Id. at 218-19. The deed was filed in the deed records. Id. at 218. Subsequently, prior to
learning of that deed, Anderson abandoned the property because he was unable to make the
payments required by the contract of sale. Id. Although they talked together several times, Ossian
never mentioned the deed to Anderson. Id. at 219. Anderson did not claim any interest in the
surface rights to the property in question, but did claim the mineral rights by virtue of the recorded
deed. Id.
      The court held that these facts establish that the contract of sale was still executory as to both
the surface and the minerals and that Ossian did not intend to convey the minerals to Anderson
without his payment of the consideration required under the contract of sale. Id. In the case at
bar, there is no executory contract involving an unpaid purchase price.
      We sustain issue one. In view of our determination of this issue, we need not consider the
remaining issues.
      We reverse the judgment and render judgment that RES Leasing & Management Co., Inc. is
the owner of 100 percent of the real property and improvements located at 3257 Ella Lee Lane,
Houston, Harris County, Texas 77019 (Lt. 3, BLK 22 River Oaks Section 4), with costs of court
charged to the appellees.

                                                                   JOHN G. HILL
                                                                   Senior Justice
Before Chief Justice Davis,
      Justice Vance, and
      Senior Justice Hill (Sitting by Assignment)
Reversed and rendered
Opinion delivered and filed March 19, 2003
[CV06]