**Mildred C. CECIL, Appellant,**

v.

**Charles Madison SMITH, Appellee.**

**No. 12–89–00044–CV.**

Court of Appeals of Texas, Tyler.

Dec. 6, 1991.

Keith Dollahite, Tyler and Michael George, Athens, for appellant.

James A. Attaway, Jr., Quitman, for appellee.

## OPINION ON REMAND

COLLEY, Justice.

On April 16, 1990, we delivered our original opinion, followed by our opinion on Appellant's Motion for Rehearing in this cause. 790 S.W.2d 709 (Tex.App.—Tyler 1990), *rev'd and remanded,* 804 S.W.2d 509 (Tex.1991). Although we invited each party to file new or supplemental briefs on remand, neither party has elected to do so.

Martha L. Wisdom (hereinafter "Decedent"), the mother of appellant Mildred Cecil and appellee Charles Madison Smith, died testate on May 7, 1985. Under the

provisions of her will, she devised and bequeathed all of the property she died seized and possessed of to the appellant and appellee, her surviving children, in equal shares. Under the will, decedent named appellee as sole independent executor of her estate.

A dispute arose between the appellant and appellee over ownership of the funds evidenced by certificate of deposit number 462058 issued by Bright Banc Savings and Loan Association, Athens, Texas, branch [1] on March 29, 1984, standing in the names of "Mrs. W.A. Cecil [appellant] or W.A. Cecil [appellant's husband] or Joann Lambert [appellant's daughter] R.R. 3 Box 407 Athens, Tex. 75751 SS# 467–30–6931" and the ownership of certain real property located at 303 South Dean Street in Athens.

Following decedent's death on May 7, 1985, her will was admitted to probate and record. Appellee qualified as independent executor of her estate. Thereafter, appellant filed an application in the probate court (constitutional county court) to remove appellee as executor and for an accounting. Appellee then filed an application in that court to recover from appellant funds in the amount of $43,094.24 held by appellant in a certificate of deposit which appellee claimed belonged to the estate. In June 1988, appellant instituted a suit against appellee in the District Court of Henderson County, Texas, to remove appellee as executor and to set aside the deed from the decedent to the appellee bearing date of April 25, 1972. The probate proceedings and the district court suit were ultimately consolidated and transferred to the county court at law where a jury trial was conducted in October of 1988. Based on jury findings favorable to appellee, the trial court signed a judgment in favor of appellee adjudging the deed to appellee to be "valid" and that the funds represented by C.D. number 462058–27–3 issued by Bright Banc Savings and Loan Association, Athens, Texas, was owned by the estate of the decedent. We reverse and render in part and affirm in part.

Appellant presents eight points of error. She argues under her points of error numbers one and three that there is "no evidence" and "factually insufficient evidence" to support the jury's finding that the deed from the decedent to the appellee "was delivered" to appellee. Under her second point of error, she argues that, under the evidence, "there was no delivery of the deed as a matter of law." By her fourth point of error, she argues that the court erred by its instruction to the jury "on what constituted delivery of a deed." By her points of error numbers five and seven, she argues that there is "no evidence" and alternatively, "factually insufficient" evidence to support the jury's finding that C.D. number 462058 was owned by her "as a matter of law." Finally, she argues under her point of error number eight that the court erred in refusing to submit to the jury, her requested question, reading:

> Do you find from a preponderance of the evidence that account number 9002251–27–3 at Dallas Federal Savings and Loan Association was started on September 29, 1981 with monies from account no. 50025 owned by Mildred Cecil?

The case was submitted to a jury upon four fact questions. Questions 3 and 4 and the accompanying instructions and answers thereto are as follows, to-wit:

*Question No. 3*

Do you find from a preponderance of the evidence that the deed dated April 25, 1972 was delivered from Martha L. Wisdom to Charles Madison Smith prior to her death?

*Instruction:* You are instructed that "Delivery" means that the deed must be placed within the control of the Grantee (Charles Madison Smith) and with the intention that it became operative as a conveyance. Actual manual delivery is

---

1. It is undisputed that Bright Banc is the successor of Athens Federal Savings and Loan Association and Dallas Federal Savings and Loan Association. Athens Federal Savings and Loan Association merged with Dallas Federal Savings and Loan Association in 1979 or 1980, and Dallas Federal Savings and Loan Association merged with Bright Banc Savings and Loan Association in 1984 (apparently before March 29, 1984).

not necessary. No particular form of words or action is necessary to accomplish delivery. Any act of declaration of the Grantor (Martha L. Wisdom) showing an intention to give effect to an executed conveyance is sufficient. Every case must depend on its own circumstances and the relations of the parties. There must be an intention to deliver and act sufficient to show a constructive delivery.

*Question No. 4*

Who do you find from a preponderance of the evidence, if anyone, to be the owner or owners of Certificate of Deposit formerly Account No. 9002251–27–3 at Dallas Federal Savings & Loan Association, Athens, Texas, and currently Account No. 462058–27–3 at Bright Banc, Athens, Texas?

Answer: "Estate of Martha L. Wisdom" or "Mildred Cecil"

Answer: Estate of Martha L. Wisdom

Appellee, called as an adverse party witness, testified in part that he first became aware of the deed signed by his mother "probably" shortly after she executed the same but that he could not be certain about the date. He did testify that his mother told him, "she had left [him] the house" or that "she had made a deed to [him] for the house." Appellee stated that the decedent had "put [the deed] in that folder that I ... hid up in [a wall] heater there at her house." He also testified that during the decedent's lifetime he removed the deed from the "folder" and filed it for record after the decedent's death.

Appellee testified that "the [decedent] definitely told [him] that she had made the deed to [him]." He admitted that the deed "was never physically delivered to [him] by [his] mother prior to her death by itself [singly]...." Appellee's testimony is to the effect that a package or envelope containing the deed "and other papers" of decedent came into his possession at the decedent's home during her lifetime. When the appellee was asked, "[y]our mother had possession of the deed. Is that right? She had the deed at her house," appellee replied, "[s]he had put [it] in that folder that I ... hid up in that heater there at her house." After that testimony, the appellee related that on another occasion when he was present in the decedent's home before her death, that he "went through those papers ...," and while searching for his mother's will, found the deed. And, after the death of the decedent, he filed the deed for record. Appellee admitted that the decedent never manually delivered the deed itself to him individually, contending only that his mother gave him "an envelope that had something in it and [he] put [the envelope] there with the rest of her papers."

Appellee also testified concerning the delivery of the deed as follows, to-wit:

Q: Did [the decedent] ever say anything to you in those words, that here's the deed?

A: Not in the words you're saying, but she told me, put this in with the papers. *She gave me the papers to hide.*

Q: Put what in with the papers?

A: Well, everything she had was papers to her and there was a CD in there for $10,000 and there was insurance papers, and she had them all bundled up in a bundle and she said, Son, here, *would you hide these in there, and at that time I knew the deed was in there.*

Q: You knew the deed was in there?

A: She told me she had left me the place and I assumed it [the deed] was in there.

Appellee Smith later testified that he had nothing to do with his mother's signing of the deed, and had never "talked to her about doing it."

According to the appellee, he found the decedent's will in a closet of her home, and he found the "rest of her papers" in an envelope placed by him in the "coils" of a "Panel Ray heater in the house."

In addressing the first point of error, we must consider only the evidence and reasonable inferences arising therefrom favorable to the finding of the jury that the deed was in fact delivered as "delivery" was defined in the court's instructions accompa-

nying question three. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); followed in *Pool v. Ford Motor Company*, 715 S.W.2d 629, 634 (Tex.1986).

■ From our study of the record, we are persuaded that there is no evidence of probative value which tends to support the jury's finding that decedent, Martha L. Wisdom, "delivered" the April 25, 1972 deed to appellee. In coming to that conclusion, we consider only appellee's testimony and the reasonable inferences arising therefrom since it is the only evidence favorable to the finding. At best, appellee's testimony shows that the decedent told him, that at some undesignated time, after the deed was executed in 1972, that she had executed the deed to him conveying the home, and that following her instructions to him on that occasion, appellant "hid" an envelope or package, or folder in which the decedent told him the deed was contained, along with other papers in a wall heater in decedent's home. According to appellee's own testimony, this package containing the deed was put in a place in decedent's home known only to him and decedent for concealment purposes. Under that testimony, the possession and control of the deed was not given over to appellee. Appellee testified that later on some undesignated date, and without the decedent's knowledge or assent, he removed the deed from its hiding place, and kept it in his possession until the decedent's death when he recorded it. This evidence demonstrates that although the deed along with other "papers" of the decedent was briefly in the possession of the appellee, that possession was clearly obtained solely for the purpose of secreting the documents contained in the package.

There is no evidence to establish that the decedent during her lifetime placed the deed within the control of the appellee with the intent that such deed become operative as a conveyance. Therefore, we sustain appellant's first point of error. *See Steffian v. Milmo Nat'l Bank*, 69 Tex. 513, 6 S.W. 823 (1888); *Ragland v. Kelner*, 148 Tex. 132, 221 S.W.2d 357 (1946); *Tyler v. Bauguss*, 148 S.W.2d 912 (Tex.Civ.App.—Dallas 1941, writ dism'd judgmt cor.); *Cf.*

*Bell v. Rudd*, 144 Tex. 491, 191 S.W.2d 841, 842–843 (1946).

Our ruling on the first point renders appellant's points of error numbers two, three, and four moot. Hence, we now address appellant's points of error numbers five, six, and seven.

■ From our careful review of the evidence, we find there is some evidence of probative force to support the jury's finding in response to question number four, that the funds evidenced by the certificate of deposit, account number 462058 issued by Bright Banc Savings and Loan Association on March 29, 1984, in the names of "Mrs. W.A. Cecil or W.A. Cecil, or Joann Lambert" was owned by the decedent at the time of her death. The testimonies of Reginal Parker and Faye Nell Willingham establish that certificate of deposit number 9002251, issued on September 29, 1981 by Athens Federal Savings and Loan Association with an opening balance of $28,616.44, and payable to account holders: "Martha L. Wisdom or Mr. or Mrs. W.A. Cecil or Joann Lambert[,]" was canceled on its maturity date of March 29, 1984, showing a balance of $43,094.24, that was on that day transferred to certificate of deposit, account number 462058, issued by Bright Banc Savings and Loan Association on that date in the identical amount but payable to the appellant, or her husband or her daughter, Joann Lambert. The testimony shows that the social security number on certificate of deposit, account number 9002251, was that of the decedent (S.S. Number 462–10–7455).

Also, certain IRS forms 1099 introduced reveal that the interest earned on account number 9002251 was to be billed to the decedent. Additionally, Parker and Willingham testified that normally, the social security number of the first person listed on a certificate of deposit is recorded because usually that person is the owner of the funds represented by the certificate of deposit.

Additionally, the evidence shows without dispute that appellant managed the decedent's business for more than twenty years and invested her funds. Appellant was

unable to produce any records from Athens Federal Savings and Loan Association or its immediate successor, Dallas Federal Savings and Loan Association or even the ultimate successor, Bright Banc Savings and Loan Association dated earlier than the year 1982.[2] Appellant did testify that she, her daughter, and her husband all made deposits in various accounts at Athens and Dallas Federal Savings and Loan Associations, and that the funds deposited in certificate of deposit account numbers 9002251 and 462058 were her funds. The evidence shows that the records of accounts made by depositors to Athens Federal Savings and Loan Association and Dallas Federal Savings and Loan Association or Bright Banc Savings and Loan Association relative to accounts opened or canceled before the year 1982 were unavailable and either lost or misplaced.

Nevertheless, we are of the opinion that there is ample evidence of probative value to support the jury's finding in response to question four, that the funds on deposit in the above-referenced certificates of deposit belonged to the decedent, not the appellant. Therefore, appellant's points of error numbers five and six are overruled.

Next, in order to decide appellant's point of error number seven, we must look at all the evidence, that is, the evidence favorable to or tending to support the finding and that is contrary thereto, including all reasonable inferences arising from such evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Pool v. Ford Motor Company,* 715 S.W.2d 629, 634 (Tex.1986).

After such a review of the evidence, and mindful that the credibility of the witnesses and the weight to be given their respective testimonies is for the jury, because of the character of the circumstances revealed by the evidence, we decline to disturb the jury's finding in response to question number four as we are convinced that such finding is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellant's point of error number seven is overruled.

■ Finally, we turn to address appellant's point of error number eight by which she contends that the court erred by refusing to submit her requested "question" concerning ownership of the money used to start the certificate of deposit by the Dallas Federal Savings and Loan Association, account number 9002251-27-3.

The appellant requested that the court submit the following question to the jury at trial, to-wit:

Do you find from a preponderance of the evidence that account number 9002251-27-3 at Dallas Federal Savings and Loan Association was started on September 29, 1981 with monies from account no. 50025 owned by Mildred Cecil?

In support of this point, appellant argues that under section 438 of the TEXAS PROBATE CODE,[3] the question was a controlling issue in the case. We disagree. The requested question was included, as appellee Smith argues, in the question actually submitted. The jury, by its finding in response to question number four found the disputed account to be *wholly* owned by the estate of the decedent contrary to Cecil's trial court contentions and her own testimony. We conclude that the controlling issue was fairly submitted under Rule 277, and that the court did not err in refusing to submit the question requested by appellant. The point of error is overruled.

We reverse that part of the judgment that adjudges as "valid" the warranty deed signed by Martha L. Wisdom on April 25, 1972, as grantor, to Madison Smith, as grantee, filed for record in the office of the County Clerk of Henderson County, Texas,

---

2. Except for a pass book savings account in her name, acct. no. 66886, with Athens Federal Savings and Loan Association, issued July 25, 1978, showing a balance of $5565.67 on March 21, 1982 and a C.D., acct. no. 550251-4 in the sum of $18,000, issued by Athens Federal Savings and Loan Association on April 4, 1975 and canceled on April 4, 1980.

3. TEX.PROB.CODE ANN. § 438(a) (Vernon 1980) reads: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

on May 20, 1985, under Clerk's file register number 9180, and duly recorded in volume 1113, pages 446–448 of the Deed Records of Henderson County, Texas, and here render judgment setting aside that conveyance, holding the same to be null and void for lack of delivery; otherwise, we affirm the judgment.

THIS CAUSE came on to be heard on the transcript of the record; and the same being inspected, it is the opinion of this Court that there was error in the judgment as entered by the trial court, and that the same should be affirmed in part and reversed and rendered in part.

It is therefore ORDERED, ADJUDGED and DECREED that that portion of the trial court's judgment stating "that the deed from Martha L. Wisdom to Madison Smith dated April 25, 1972, filed at Book 1113, Page 446, deed records of Henderson County, Texas was delivered to Charles Madison Smith prior to the date [sic] of Martha L. Wisdom, and is therefore a valid deed" is reversed and judgment is hereby rendered in favor of appellant, Mildred C. Cecil; and the judgment of the trial court is hereby reformed to read:

"that the deed from Martha L. Wisdom to Madison Smith dated April 25, 1972, filed at Book 1113, Pages 446–448 of the Deed Records of Henderson County, Texas, was not delivered to Charles Madison Smith prior to the death of Martha L. Wisdom and is void and, further, the Estate of Martha L. Wisdom, Deceased, is the owner of the property recited in the said deed";

in all other respects, the judgment of the trial court is affirmed.

It is further ORDERED that both the Appellant, Mildred C. Cecil, and the Appellee, Charles Madison Smith, pay one-half each of all costs in this cause expended, both in this Court and the court below for all of which execution may issue; and that this decision be certified to the court below for observance.